UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FRANCISCO ALEJANDRO MELO,

                              Plaintiff,                    **REPORT AND**
                                                            **RECOMMENDATION**
         -against-                                          21-CV-4438-PKC-SJB

MILAGRO GROCERY CORP. d/b/a MILAGRO
GROCERY, MARCIAL GONZALEZ, and DANIEL
RICHARDSON,

                              Defendants.
------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On August 6, 2021, Plaintiff Francisco Alejandro Melo ("Plaintiff" or "Melo")

brought this action against Defendants Milagro Grocery Corp. d/b/a Milagro Grocery

("Milagro"), Marcial Gonzalez ("Gonzalez"), and Daniel Richardson ("Richardson")

(collectively, "Defendants"), alleging violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §201 *et seq.* and the New York Labor Law ("NYLL").  (Compl. dated

Aug. 6, 2021 ("Compl."), Dkt. No. 1).  Following Defendants' failure to defend, Melo

moved for default judgment.  (Mot. for Default J. dated Oct. 16, 2023 ("Mot. for Default

J."), Dkt. No. 38).  For the reasons stated below, it is respectfully recommended that the

motion be granted, and damages be amended as detailed herein.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Milagro is a New York corporation with its principal place of business in

Brooklyn, where it operates a grocery store and deli.  (Compl. ¶ 5).  Gonzalez and

Richardson are both owners or part owners of Milagro, and had the power to hire and

fire employees, set wages and schedules, and maintain Milagro's records.  (*Id.* ¶¶ 6–7,

12).  Melo worked at Milagro as a food runner, maintenance worker, and behind-the-

counter worker at the deli from approximately July 2012 to June 17, 2021.  (*Id.* ¶ 18, 20).

When he was hired, Melo did not receive a wage notice.  (*Id.* ¶ 34).  Melo worked six

days per week, from 2:00 P.M. to 12:00 A.M.  (*Id.* ¶ 23).  He typically worked every day

except Tuesdays, but about twice a month, he worked from 2:00 P.M. to 12:00 A.M. on

Tuesday as well.  (*Id.* ¶¶ 23–24).  He typically worked 60 hours per week, but worked 70

hours in the weeks where he also worked on Tuesday.  (Compl. ¶ 25).  He was paid in

cash each week and was not given paystubs.  (*Id.* ¶ 26).  From 2012 to 2019, Melo was

typically paid $450 each week, and from 2020 to 2021, he was paid $500 per week.  (*Id.*

¶ 27).  When he worked the Tuesday shift, he was given an extra $75 per week.  (*Id.*

¶ 28).  Melo was not paid overtime wages.  (*Id.* ¶ 32).

Melo commenced this action on August 6, 2021.  (Compl.).  In the Complaint,

Melo alleges: (1) failure to pay minimum wage under NYLL; (2) failure to pay overtime

wages under FLSA and NYLL; (3) failure to provide wage notices under NYLL § 195(1);

and (4) failure to provide wage statements under NYLL § 195(3).  (*Id.* ¶¶ 42–63).

Milagro was served through the Secretary of State on August 31, 2021.

(Summons Returned Executed filed Sept. 17, 2021, Dkt. No. 10).[1]  On October 7, 2021,

Attorneys Qinyu Fan and Jian Hang filed notices of appearance on behalf of all

Defendants.  (Not. of Appearance by Qinyu Fan, Dkt. No. 12; Not. of Appearance of Jian

Hang, Dkt. No. 13).  Following an extension of the time to answer which was granted by

---

[1] Gonzalez and Richardson were not served.  However, Gonzalez and Richardson waived any objections to service by initially appearing in the case, through counsel, and participating in the litigation without questioning personal jurisdiction, including by filing an answer.  *See Datskow v. Teledyne, Inc., Cont'l Prods. Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990) (finding defendant's actions, including attending a conference with a magistrate judge and participating in discovery and motion practice, barred defendant from complaining about defective service).

the Court, (Order dated Oct. 18, 2021), Defendants filed an answer, and then an amended answer with counterclaims against Melo. (Answer dated Nov. 5, 2021, Dkt. No. 17; Am. Answer dated Nov. 7, 2021 ("Am. Answer"), Dkt. No. 18). The parties engaged in discovery, (*see* Report of Rule 26(f) Planning Meeting dated Feb. 2, 2022, Dkt. No. 21; Order dated July 3, 2022), and participated in mediation, (Report of Mediation Unsettled dated July 26, 2022). Discovery closed on January 31, 2023, (Order dated Nov. 11, 2022), and the parties were directed to file a joint pre-trial order by April 7, 2023. (Min. Entry & Order dated Jan. 24, 2023).

Counsel for Defendants filed a motion to withdraw on March 27, 2023 because Defendants had not paid outstanding legal fees. (Affirm. of Yongjin Bae, attached as Ex. 1 to Mot. to Withdraw, Dkt. No. 30-1). After a hearing on the motion, the Court granted the motion only as to Gonzalez and Richardson, and gave all Defendants until June 8, 2023 to find new counsel. (Min. Entry & Order dated Apr. 25, 2023). The Court noted that if Milagro failed to find new counsel by June 8, 2023, the motion to withdraw would also be granted as to Milagro. (*Id.*). Milagro failed to retain new counsel and Gonzalez and Richardson failed to inform the Court of their intention to defend against the claims; the Court, therefore, instructed Melo to seek a certificate of default against all Defendants. (Order dated June 16, 2023; Min. Entry & Order dated Apr. 25, 2023 ("With respect to Milagro Grocery Corp., it is axiomatic that a corporation is not permitted to proceed without counsel in federal court. *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006) ('[I]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney[.]' (quotations omitted)). Failure to obtain counsel will expose Milagro Grocery to a default. *See La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) ('Such a failure to

obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court *pro se*.' (citing *Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam))).")).  Melo requested a certificate of default, (Req. for Certificate of Default, Dkt. No. 35), which the Clerk of Court entered for each Defendant.  (Clerk's Entry of Default dated June 26, 2023 ("Clerk's Entry of Default"), Dkt. No. 37).  After a warning from the Court that the case would be dismissed for failure to prosecute if Melo failed to move for default, (Order dated Sept. 15, 2023), Melo filed the present motion.  (Mot. for Default J.).[2]

Melo seeks: (1) $248,719.65 in unpaid minimum and overtime wages; (2) $10,000 for violations of the Wage Theft Protection Act; (3) $248,719.65 in liquidated damages; (4) $11,120 in attorney's fees and $1,002 in costs; and (5) $117,535.36 in pre-judgment interest.  (Pl.'s Mem. of Law in Supp. of Mot. for Default J. ("Pl.'s Mem. of Law), Dkt. No. 40 at 9).

DISCUSSION

I.    <u>Entry of Default</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

---

[2] Following Plaintiff's motion, Marcial Gonzalez filed a motion to appoint counsel, which the Court denied.  (Mot. to Appoint Counsel dated Dec. 1, 2023, Dkt. No. 41; Order dated Dec. 6, 2023).  The Court granted Gonzalez until February 4, 2024 to file any opposition to the motion for default judgment, but Gonzalez has not filed anything.

otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  Fed. R. Civ. P. 55(b)(2).  The Clerk of Court entered a default against each Defendant on June 23, 2023.  (Clerk's Entry of Default).

The next question, before reaching liability or damages, is whether Defendants' conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Defendants' failure to defend against Melo's claims demonstrates their default was willful.  Milagro failed to obtain new counsel after its counsel withdrew, and Gonzalez and Richardson failed to notify the Court of their intention to defend, despite being ordered to do so.  (Order dated June 16, 2023).  These acts of noncompliance demonstrate that Defendants' default was willful.  *See, e.g.*, *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996, 2021 WL 6065744, at *3 (E.D.N.Y. Dec. 22, 2021), (finding defendants' failure to comply with court orders to obtain counsel or complete discovery was willful), *report and recommendation adopted*, 2022 WL 842666, at *4 (Mar. 22, 2022); *Castillo v. Zishan, Inc.*, No. 16-CV-6166, 2017 WL

3242322, at *2 (S.D.N.Y. July 28, 2017) (finding defendants' failure to appear *pro se* or obtain new counsel, and their failure to respond to motion for default judgment, to be willful).

Second, the Court must consider whether Defendants have a meritorious defense. Defendants filed an Answer denying most of the allegations in the Complaint and asserting affirmative defenses, including statute of limitations and that Plaintiff was paid all wages owed.  (*See generally* Am. Answer).  Though Defendants' Answer only contains general denials and defenses, it is sufficient to raise a meritorious defense.  *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 124 (E.D.N.Y. 2011) (finding meritorious defense where defendants denied allegations and asserted affirmative defenses) (adopting report and recommendation).

However, Defendants prior assertion of a meritorious defense does not preclude entry of default judgment now.  *See Integrity Commc'ns Corp. v. Baker*, No. 10-CV-3238, 2012 WL 1309153, at *2 (S.D.N.Y. Mar. 26, 2012) ("[A]lthough Baker has presented some possibly meritorious defenses to the claims alleged in Schnitzer's Complaint, these do not outweigh the other factors favoring default."), *report and recommendation adopted*, 2012 WL 1309136, at *1 (Apr. 16, 2012).

Third, Plaintiff would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

The Court now turns to the liability imposed, damages, and other relief to be awarded.  *See also Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 124 ("Although Defendants have raised a meritorious defense, this Court finds that the other factors set forth . . . weigh in favor of granting Plaintiff's motion for a default judgment.  The fact that Defendants have not submitted a brief in opposition to Plaintiff's motion further supports that conclusion.  Moreover, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, Defendants will still have fourteen days after the service of this Report and Recommendation to raise objections to these findings should they so choose.").

II.    <u>Liability</u>

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [his or her] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).  "Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment." *Henry v. Oluwole*, No. 21-CV-2468, 2024 U.S. App. LEXIS 17218, at *20 (2d Cir. July 15, 2024).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

conclusions of law." *LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)).  "[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (first citing Fed. R. Civ. P. 8(b)(6); and then citing *Romanowicz*, 577 F.3d at 83 n.6).

A. Unpaid Minimum Wages under NYLL

Melo alleges that Defendants failed to pay him the required minimum wage required under NYLL.  NYLL § 652(1).  He alleges that from 2015 to 2019, he was paid $450 a week for 60 hours of work and $525 for 70 hours.[3]  (Compl. ¶¶ 27–28).  From 2020 to 2021, he was paid $500 a week for 60 hours of work and $575 for 70 hours. (*Id.*).  The general minimum wage for all of New York state was $8.75 per hour in 2015 and $9.00 in 2016.  *See History of the Minimum Wage in New York State*, N.Y. State Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited

---

[3] Melo filed the Complaint on August 6, 2021.  (Compl.)  As a result, Melo's work from August 6, 2015 to June 17, 2021 is within the limitations period under NYLL, *see* NYLL § 633(3), and his work from August 6, 2018 to June 17, 2021 is within the FLSA limitations period.  *See* 29 U.S.C. § 255(a).  And indeed, Plaintiffs conceded the point, by only calculating damages from 2015 forward, (Pl.'s Calculations ("Pl.'s Calculations"), attached as Ex. 5 to Affirm. of Michael Samuel ("Samuel Affirm."), Dkt. No. 39-5 at 1), not from 2012, which is when the alleged non-payment began.  (Compl. ¶¶ 18, 27).

Aug. 14, 2024).  The minimum wage rate for New York City employers with ten or fewer employees thereafter increased yearly: $10.50 per hour in 2017; $12.00 per hour in 2018; $13.50 per hour in 2019; and between December 31, 2019 and January 1, 2024, $15.00 per hour.[4]  *Id.*; NYLL § 652(1)(a).  From 2015 to 2019, Melo was paid a regular hourly rate of $12.19, and from 2020 to 2021, he was paid an hourly rate of $13.44.[5] Melo was paid below the applicable minimum wage for all hours worked from 2019 to 2021; thus, the Court finds the Defendants liable for minimum wage violations under NYLL and FLSA from 2019 to 2021.

### B.  Unpaid Overtime Wages Claims

Melo alleges that Defendants violated the overtime provisions of both FLSA and NYLL.  (Compl. ¶¶ 32, 47–57).  Melo has established liability under both statutes.

FLSA's overtime wage requirement provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not

---

[4] Melo does not allege how many employees Milagro employed or whether Milagro was a small or large employer.  Without this information, the Court only has reasonable certainty that Milagro employed Melo, and therefore, uses the minimum wage for small employers in its damages calculations.

[5] Because Melo worked behind the counter at the deli and as a food runner, (Compl. ¶¶ 18, 20), the Court concludes that Milagro qualifies as a "restaurant" under the meaning of NYLL and that Melo was therefore a hospitality industry employee.  *See, e.g.*, *Ramos v. Guaba Deli Grocery Corp.*, No. 20-CV-4904, 2021 WL 5563714, at *9 n.9 (S.D.N.Y. Nov. 29, 2021) (finding a deli to be a restaurant where plaintiffs' job duties included food preparation) (collecting cases), *appeal dismissed sub. nom. Ramos v. Rivera*, No. 22-82, 2022 WL 1564556, at *1 (2d Cir. Apr. 21, 2022).  To calculate Melo's regular rate of pay, the Court totaled his biweekly pay and divided the total by 80 hours. *See* N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 146-3.5(b) ("[A hospitality industry] employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.").

less than one and one-half times the regular rate at which he is employed[.]'"[6] *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). Similarly, NYLL's overtime provision specifies that eight hours constitutes a "legal day's work," NYLL § 160(3), and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate." 12 N.Y.C.R.R. § 142-2.2.

Melo alleges that he worked 60 hours per week twice a month and 70 hours per week twice a month, and that he was not paid at a wage rate of time and a half for his hours regularly worked in excess of 40 hours per week. (Compl. ¶¶ 25, 30, 32). These claims include the necessary factual allegations to state overtime violation claims under FLSA and NYLL, and the Court finds that Defendants are liable for overtime violations under both statutes.

C. NYLL Spread-of-Hours Claim

Under the NYLL, employees are entitled to recover an hour's pay at the minimum wage for every day the employees work more than 10 hours. 12 N.Y.C.R.R. § 142-2.4. Melo claims he is entitled to spread-of-hours damages. (Pl.'s Mem. of Law at 4–5). But Melo does not allege that he worked over 10 hours a day. During the weeks he worked six days, he worked 60 hours, and during the weeks he worked seven days, he worked 70 hours. (Compl. ¶¶ 23, 25). But because he does not allege that he worked more than 10 hours any day, the Court concludes that Defendants are not liable for violations of

---

[6] In other words, under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5. The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.113(a), or the applicable minimum wage if the regular rate falls below the applicable minimum. *Id.* § 778.5.

NYLL's spread-of-hours provision. *See, e.g.*, *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 658 (E.D.N.Y. 2020) ("Ms. Dai is not entitled to spread of hours wages because her workday did not span more than ten hours a day."); *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 556 (S.D.N.Y. 2017) ("Because neither plaintiff worked a split shift or worked a shift longer than 10 hours, they are not entitled to 'spread of hours' pay.").

    D.  <u>Wage Theft Protection Act Claims</u>

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide written wage notice "within 10 business days of his first day of employment." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015)). The written notice must be "in writing in English and in the language identified by each employee as the primary language of such employee." NYLL § 195(1)(a). The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid. *Id.* § 195(3).

Melo alleges that Defendants never provided him with a wage notice. (Compl. ¶¶ 34, 60). He was also never provided a wage statement with each payment, as

required by the WTPA.  (*Id.* ¶¶ 26, 35, 61).  Accordingly, Melo has sufficiently established liability on these claims.  *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *8 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555, at *2 (Apr. 12, 2018).

III.    <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158.  "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002).  An employee may meet her burden of showing the amount and extent of her hours worked through her

own recollection.  *See Pineda*, 831 F. Supp. at 674.  As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct."  *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371, at *1 (Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (holding that district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers" (citations omitted)).

A. Unpaid Minimum Wages

Although Defendants are liable under both FLSA and NYLL for failing to pay Plaintiffs the minimum wage, *supra* at pp. 8–9, Melo cannot recover unpaid wages under both statutes for any period of overlapping work.  *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 n.15 (E.D.N.Y. 2015) ("Plaintiffs may not recover for unpaid wages under both statutes[.]").  The NYLL requires that an employee be paid at or above the state minimum wage rate.  *See* NYLL § 652(1)(a).

In 2019, when the minimum wage was $13.50, Melo was paid a regular hourly rate of $12.19.  From 2020 to 2021, when the minimum wage was $15.00, Melo was paid a regular hourly rate of $13.44.  The Court's calculations of Melo's unpaid minimum wages are set out below.

| Time Period | Hourly Wage Paid to Plaintiff | Minimum Wage Under NYLL | Unpaid Minimum Wage Per Hour | Regular Hours Worked Per Week | Weeks Worked | Total Unpaid Minimum wage |
|---|---|---|---|---|---|---|
| 2019 | $12.19 | $13.50 | $1.31 | 40 | 52 | $2,724.80 |
| 2020 | $13.44 | $15.00 | $1.56 | 40 | 52 | $3,244.80 |
| 2021 | $13.44 | $15.00 | $1.56 | 40 | 24 | $1,497.60 |
| | | | | | TOTAL | $7,467.20 |

The Court recommends that Melo be awarded $7,467.20 in unpaid minimum wages.[7]

B.  Unpaid Overtime Wages

Both federal and state law require that employers pay employees a 50% premium for their overtime hours—that is, the hours in excess of 40 that they have worked in each work week.  29 C.F.R. § 778.105; 12 N.Y.C.R.R. § 146-1.4.  Like above, Plaintiffs cannot recover unpaid overtime compensation under both statutes for any period of overlapping work.  *See Pinzon v. Paul Lent Mech. Sys. Inc.*, No. 11-CV-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under FLSA and the NYLL), *report and recommendation adopted*, 2012 WL 4174410, at *1 (Sept. 19, 2012).  "If a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief."  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (alteration in original) (quotations omitted), *aff'd*, 752 F. App'x 33, 37 (2d Cir. 2018).

Melo alleges that from August 6, 2015 to June 17, 2021, he alternated working 60 hours and 70 hours, every other week, of which 20 hours and 30 hours would constitute overtime.  (Compl. ¶¶ 23–25).  His regular rate of pay between August 6, 2015 and

---

[7] Melo seeks $103,630.36 in unpaid minimum wages.  (Pl.'s Calculations).  His calculations are flawed, as he seems to multiply the unpaid minimum wage by the total number of hours worked (65) as opposed to the regular hours worked (40).  (*Id.*).  Additionally, he does not calculate the regular rate of pay pursuant to New York regulations.  (*Id.*).

December 31, 2019 was $12.19 ($975/80),[8] and $13.44 ($1,075/80)[9] from January 1, 2020 to June 17, 2021.  (*See id.* ¶ 27).  For 2015 to 2018, the regular rate ($12.19) can be used to calculate overtime, as it is above the minimum wage.  However, because the regular rate of pay is below minimum wage in 2019 ($13.50) and from 2020 to 2021 ($15.00), the Court uses the relevant minimum wage as the regular rate of pay.  *See Alfaro v. Saba Live Poultry Corp. I*, No. 23-CV-1102, 2024 WL 2112878, at *4 (S.D.N.Y. May 6, 2024), *report and recommendation adopted*, 2024 WL 3595962, at *1 (July 30, 2024).

The overtime rate is 1.5 times the hourly rate, which results in Melo being owed: $18.29 for each overtime hour worked from 2015 to 2018; $20.25 for each overtime hour in 2019; and $22.50 for each overtime hour from 2020 to 2021.

| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Total |
|---|---|---|---|---|---|---|---|---|
| **Biweekly Hours** | 130 | 130 | 130 | 130 | 130 | 130 | 130 | |
| **Biweekly Salary** | $975 | $975 | $975 | $975 | $975 | $1,075 | $1,075 | |
| **NYLL Regular Hourly Rate** | $12.19 | $12.19 | $12.19 | $12.19 | $13.50 | $15.00 | $15.00 | |
| **NYLL Overtime Rate** | $18.29 | $18.29 | $18.29 | $18.29 | $20.25 | $22.50 | $22.50 | |
| **Biweekly Overtime Hours** | 50 | 50 | 50 | 50 | 50 | 50 | 50 | |
| **Biweekly Overtime Wages Owed** | $914.50 | $914.50 | $914.50 | $914.50 | $1,012.50 | $1,125.00 | $1,125.00 | |
| **Biweekly Periods Worked** | 10.5 | 26 | 26 | 26 | 26 | 26 | 12 | |
| **Total Overtime Wages Owed** | $9,602.25 | $23,777.00 | $23,777.00 | $23,777.00 | $26,325.00 | $29,250.00 | $13,500.00 | $150,008.25 |

---

[8] Because Melo worked different hours and was paid differently every other week, the Court calculated his regular rate of pay by adding two weeks of pay ($450 for a 60 hour week and $525 for a 70 hour week) and dividing that by 80 hours.

[9] As above, this rate was calculated by adding two weeks of pay from 2020 to 2021 ($500 for a 60-hour week and $575 for a 70-hour week) and dividing that by 80 hours.

The Court thus recommends that Melo be awarded $150,008.25 in unpaid overtime wages.[10]

C.  Liquidated Damages

Melo seeks liquidated damages under NYLL.  (Pl.'s Mem. of Law at 5–6).

An employee can recover liquidated damages under the NYLL "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  NYLL § 198(1-a).  For all NYLL claims that accrued on or after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due.  *Id.* § 663(1).

Based on the recommendation that Melo be awarded $7,467.20 in unpaid minimum wages and $150,008.25 in unpaid overtime damages, the Court recommends that Melo be awarded $157,475.45 in liquidated damages.

D.  Wage Theft Prevention Act Damages

Melo worked for Defendants for almost nine years.  (Compl. ¶ 18).  For the wage notice claim, he is entitled to recover $50 per day up to a maximum of $5,000.  NYLL § 198(1-b).  For the wage statement claim, he is entitled to recover $250 per day up to a maximum of $5,000.  *Id.* § 198(1-d).  Because Melo never received a wage notice or wage statements from Defendants, and because Melo worked for Defendants for well over 100 days, he is entitled to the statutory maximum of $5,000 under each provision.  *E.g.*, *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321, 2021 WL 7500316, at *9 (E.D.N.Y. Mar. 1, 2021), *report and recommendation adopted*, Order (Mar. 23, 2021); *De Los*

---

[10] Melo requests $145,392.86 in damages for unpaid overtime.  (Pl.'s Calculations at 2).  It appears Melo calculated the regular rate of pay by dividing his weekly pay by total hours worked, not 40 hours, so his requested rate is lower.

*Santos v. Marte Constr., Inc.*, No. 18-CV-10748, 2020 WL 8549054, at *8 (S.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, 2020 WL 8549055, at *2 (Dec. 17, 2020).  Therefore, Melo should be awarded a total of $10,000 in WTPA damages.

     E.  <u>Pre-Judgment Interest</u>

     Melo also seeks pre-judgment interest.  (Pl.'s Mem. of Law at 8–9).  "NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin*, 93 F. Supp. 3d at 48.[11]  Melo is entitled to an award of pre-judgment interest on his NYLL damages at a rate of 9% per year.  N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  *Id.* § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (adopting report and recommendation).  Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.  *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" (quotations omitted)).  The most commonly used intermediate date is the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed. . . ."  *See, e.g.*, *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases).

---

[11] Pre-judgment interest is calculated based on the unpaid wages due under NYLL only, not on liquidated damages.  And pre-judgment interest is not available for violations of the wage statement or wage notice provisions of NYLL.  *See Jin Li v. W. Metal Work & Supply, Inc.*, No. 17-CV-1015, 2019 WL 2436275, at *6 n.7 (E.D.N.Y. Feb. 27, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 56849, at *1 (Mar. 29, 2019).

Melo's NYLL damages cover his work for Defendants from August 6, 2015 to June 17, 2021. *See supra* at p.8 n.3. The Complaint was filed on August 6, 2021. (Compl.). There are 2,192 days, or approximately 313 weeks, between August 6, 2015 and August 6, 2021. Half of 2,192 is 1,096; 1,096 days from August 6, 2015 is August 6, 2018. The Court recommends that pre-judgment interest be awarded by the Clerk of Court in a daily amount of $38.83 per day from August 6, 2018, until the date final judgment is entered.[12]

### F. Post-Judgment Interest

"The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)). The Court therefore recommends a post-judgment interest award on the total damages, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters judgment until the date of payment. *See Fermin*, 93 F. Supp. 3d at 53 (listing cases and awarding post-judgment interest in FLSA cases).

### IV. Attorney's Fees and Costs

It is well-settled that FLSA and NYLL provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff. *See* 29 U.S.C. § 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); NYLL § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or

---

[12] The total amount ($157,475.45) at nine percent annually results in approximately $14,172.79 per year in interest, or $38.83 per day (rounded) based on 365 days per calendar year.

the commissioner in which the employee prevails, the court shall allow such employee

to recover . . . all reasonable attorney's fees[.]").  By virtue of the entry of default

judgment, Castillo is a prevailing Plaintiff.  The "starting point" for determining the

amount of attorney's fees to be paid by Defendants is calculation of the "lodestar," which

is "the product of a reasonable hourly rate and the reasonable number of hours required

by the case."  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

When assessing whether legal fees are reasonable, the Court determines the

"presumptively reasonable fee" for an attorney's services by examining what reasonable

clients would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n

v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008).  To calculate the

presumptively reasonable fee, a court must first determine a reasonable hourly rate for

the legal services performed.  *Id.*  The next step is to determine the reasonableness of

the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*,

No. 07-CV-669, 2008 U.S. Dist. LEXIS 125161, at *9 (E.D.N.Y. Feb. 26, 2008), *report

and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 17, 2008).

The number of hours spent on a lawsuit are considered unreasonable if they are

excessive, redundant, or unnecessary.  *See, e.g.*, *LaBarbera v. Frank J. Batchelder

Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing

*Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)) (adopting report and

recommendation).  "District courts have broad discretion, using their experience with

the case, as well as their experience with the practice of law, to assess the reasonableness

of each component of a fee award."  *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584,

2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations omitted), *report and

recommendation adopted*, 2015 WL 5330388, at *1 (Sept. 11, 2015).

A.  <u>Hourly Rate</u>

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award.  In determining the lodestar, courts "should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations omitted).  "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022) (quotations omitted), *report and recommendation adopted*, 2022 WL 4662247, at *1 (Sept. 30, 2022).  "The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), *report and recommendation adopted*, 2014 WL 1237127, at *1 (Mar. 25, 2014).  That is, "the fee applicant [has the burden] to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) ("The relevant community . . . is the district in which the court sits.").

Michael Samuel and his law firm represent Melo in this case.  (Samuel Affirm. ¶ 1).  He seeks attorney's fees for Andrew Beresin, counsel at the Samuel Law Firm.  (*Id.* ¶ 18; Billing Records ("Billing Records"), attached as Ex. F to Samuel Affirm., Dkt. No.

39-6).  Mr. Beresin requests an hourly rate of $400.  (Samuel Affirm. ¶ 18).  Mr. Beresin

has been admitted to practice since 1992 and is counsel at the firm, (*id.*), but no other

information is provided about him.  The affidavit does not provide information as to Mr.

Beresin's experience; as such, the Court finds the requested rate excessive.  The Court

finds it is appropriate to award Mr. Beresin $325 per hour, which is at the high end for

senior associates.  *See Jones v. Pawar Bros. Corp.*, No. 17-CV-3018, 2023 WL 6214213,

at *8 (E.D.N.Y. Sept. 25, 2023) ("Hourly rates for senior associates in this District range

from $200–$325[.]" (quotations omitted)).

B. Hours Expended

Turning to the reasonableness of time expended, courts look to the

contemporaneous time records of the attorneys.  The Second Circuit requires that "any

attorney . . . who applies for court-ordered compensation in this Circuit . . . document

the application with contemporaneous time records."  *N.Y. State Ass'n for Retarded

Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Those records "should specify,

for each attorney, the date, the hours expended, and the nature of the work done."  *Id.*

To be contemporaneous, the time records "must be made . . . while the work is being

done or . . . immediately thereafter."  *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d

239, 249 (S.D.N.Y. 2010).  "Descriptions of work recollected in tranquility days or weeks

later will not do."  *Id.*  "The contemporaneous time records requirement is strictly

enforced[.]" *Valentine v. Aetna Life Ins. Co.*, No. 14-CV-1752, 2016 WL 4544036, at *7

(E.D.N.Y. Aug. 31, 2016).

"[C]ourts are . . . expected to take into account their own familiarity and

experience both 'generally' and with the particular case at hand, rather than attaining

'exactitude' with respect to each individual billing entry."  *Concrete Flotation Sys., Inc.*

*v. Tadco Constr. Corp.*, No. 07-CV-319, 2010 WL 2539771, at *7 (E.D.N.Y. Mar. 15, 2010) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)), *report and recommendation adopted*, 2010 WL 2539661, at *1 (June 17, 2010). "The court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation." *See Nuriddinov v. Masada III, Inc.*, No. 15-CV-5875, 2017 WL 9253401, at *12 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2018 WL 1251335, at *1 (Mar. 12, 2018). Courts have "the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quotations omitted).

Counsel submitted contemporaneous billing records showing the legal services rendered for work performed, including the dates that the services were provided, the amount of time during which services were provided, and a brief description of each task performed. (Billing Records). According to the billing records submitted, Mr. Beresin spent a total of 27.48 hours on this case. (*Id.*). Having reviewed the time records, the Court finds these hours to be reasonable. Though this case is being resolved in a default judgment, Defendants litigated this case for a year and a half, and the parties went to mediation. Even so, the hours requested are typical of default judgment in a FLSA case. Accordingly, the Court finds the requested hours reasonable. *See, e.g.*, *Du v. CGS Metal Fabrication Inc.*, No. 19-CV-1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 27.6 hours of associate time and 3.5 hours of paralegal time reasonable) (collecting cases), *report and recommendation adopted*, Order (Jan. 31, 2022).

Below is the Court's fee calculations, based upon the adjusted hourly rate:

|  | Mr. Beresin |
|---|---|
| **Requested Billing Rate** | $400 |
| **Awarded Billing Rage** | $325 |
| **Requested Hours Billed** | 27.48 |
| **Total Attorney's Fees** | **$8,931** |

The Court recommends $8,931.00 be awarded in attorney's fees.

C. Costs

Counsel also seeks reimbursement for $1,002 in costs, consisting of $402 in filing fees and $600 in deposition transcript fees. (Billing Records). Under both FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

Plaintiff submitted an invoice as evidence for the deposition transcript cost. (Deposition Transcript Invoice dated Feb. 3, 2023, attached as Ex. G to Samuel Affirm., Dkt. No. 39-7). The filing fees are supported by the docket entry that indicates that the filing fee was paid. (Dkt. No. 1); *see, e.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (holding that filing fees are recoverable without supporting documentation if verified by the docket). The Court deems these costs to be reasonable and recommends that Plaintiffs be awarded $1,002.00 in costs.

CONCLUSION

For the reasons stated above, it is respectfully recommended that default judgment be entered against Defendants Milagro, Gonzalez and Richardson and that Plaintiff be awarded:

- $7,467.20 in unpaid minimum wages;

- $150,008.25 in unpaid overtime wages

- $157,475.45 in liquidated damages;

- $10,000 in WTPA damages;

- Pre-judgment interest in the amount of $38.83 per day between August 6, 2018 and the day judgment is entered;

- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a);

- $8,931.00 in attorney's fees; and

- $1,002.00 in costs.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants and file proof of such service on the docket.

SO ORDERED.

*/s/ Sanket J. Bulsara*  August 19, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York